IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ZACHERY SCOTT KEESEE**                                                              **PLAINTIFF**
**ADC #175621**

v.                              **CASE NO. 4:22-CV-00002-BSM**

**ANDREW JOHNSON,** *et al.*                                                         **DEFENDANTS**

## ORDER

The motion for summary judgment filed by James Burroughs and Andrew Johnson [Doc. No. 229] is granted and Zachery Keesee's claims are dismissed with prejudice.

### I. BACKGROUND

Keesee is serving a life sentence for murdering Leonel Panduro. He alleges that defendants violated his constitutional and statutory rights while investigating the murder, locating him, and questioning witnesses. After a series of motions to dismiss and for judgment on the pleadings, *see* Doc. Nos. 151, 180 & 196, only two claims remain: one against Burroughs for coercing a witness into making a false statement and another against Johnson for providing false information in his applications for warrants of arrest. *See* Order on Mot. J. Pleadings 3 & 5, Doc. No. 196. Burroughs and Johnson are moving for summary judgment.

Panduro was found shot dead at a Days Inn in Conway, Arkansas on May 8, 2018. Statement of Undisputed Material Facts ¶ 1, Doc. No. 231 ("SUMF"). Johnson, a Conway police officer, was one of the first officers to arrive at the scene. Incident Report 9, Doc. No. 231-1. Johnson received a call from Panduro's cousin, Mariela Ochoa, who told him that

Keesee had arranged a meeting earlier that morning between Panduro and a man named Andrew (later identified as Andrew Morstain) for Panduro to buy a truck. SUMF ¶¶ 10–11, 14. A digital extraction of Panduro's phone revealed numerous calls and texts between Panduro and a person named "Zack" in the days and weeks before the murder. *Id.* ¶¶ 16–18, 20–21. Keesee admits that he is the "Zack" that Panduro was communicating with. *Id.* ¶ 19.

Burroughs was a Conway police officer who also served as a Special Deputy U.S. Marshal with the Eastern District of Arkansas Fugitive Task Force. *Id.* ¶ 22. On the day of the murder, he contacted Johnson to offer his assistance in tracking down the suspects as part of the U.S. Marshals task force. *Id.*; Incident Report 27–28. Burroughs identified himself as a Special Deputy U.S. Marshal to Johnson and is described as one in the incident report and applications for warrant of arrest. Incident Report 27, 29, 30, 32, 34, 35, 38, 39, 46; May 10, 2018 Application 2, Doc. No. 231-7; June 13, 2018 Application 2, Doc. No. 231-8.

Later that day, Burroughs interviewed Keesee's ex-girlfriend, Taylor Huff. SUMF ¶ 23. Huff seemed reluctant to provide information, so Burroughs made statements such as "you don't want to be involved in this" and "you need to tell the truth." *Id.* ¶¶ 25–26. These are statements he commonly used in fugitive investigations. *Id.* Burroughs also encouraged Huff to speak with Johnson about her knowledge of Keesee's whereabouts. *Id.* ¶ 25. Burroughs had no further contact with Huff after this interview. *Id.* ¶ 27. He states that he participated in the interview in his role as a task force officer attempting to locate Keesee and that he never coerced Huff to give false information or to alter her statement in any way. *Id.* ¶¶ 24, 26; Declaration of James Burroughs ¶¶ 4, 6, Doc. No. 231-11.

Huff's lawyer, John Collins, told Johnson on May 10 that Huff was concerned that she would be criminally charged for withholding information. SUMF ¶ 30. Collins told Johnson that Huff had written a statement that she spoke with Keesee shortly before the murder and that Keesee told her that (1) Panduro had threatened to cut Keesee's fingers off, (2) Keesee's boys were coming to take care of Panduro, and (3) Keesee was going to be gone for a while. *Id.* ¶ 31. Huff voluntarily came to the Conway Police Department that day with Collins for an interview with Johnson. *Id.* ¶ 33. In the interview, Huff reiterated the information Collins provided to Johnson. Taylor Huff Interview Transcript 4–5, Doc. No. 231-13. Collins also provided Johnson with details given to him by Huff regarding where Keesee's "boys" were from. *Id.* at 5–6.

Later that day, Johnson submitted an application for a warrant to arrest Keesee for conspiracy to commit murder. SUMF ¶ 77. The Faulkner County Circuit Court issued the warrant the next day. *Id.*; May 11, 2018 Warrant, Doc. No. 231-24. Around that time, Special Deputy U.S. Marshal Travis Eddleman obtained location data associated with Keesee's phone number pursuant to a court order and provided it to Johnson. SUMF ¶¶ 38–43; Incident Report 30. On June 13, Johnson submitted an application for a warrant to arrest Keesee for capital murder, which included this location data. SUMF ¶ 82; June 13, 2018 Application 2–3. On June 20, the Faulkner County Circuit Court entered an order to recall the previous warrant and issued a new warrant. SUMF ¶¶ 81–82; Order to Recall Warrant, Doc. No. 231-25; June 20, 2018 Warrant, Doc. No. 231-26. Two undisputed inaccuracies appear in both applications: (1) the habitual offender box is checked, indicating

3

that Keesee had two or three prior felonies, SUMF ¶¶ 79–80, 84–85; and (2) the date of the offense is listed (correctly) as May 8, 2018, but the body of the applications states that Johnson was called to the scene of the homicide on May 7, 2018. SUMF ¶¶ 78 & 83.

Both applications represented that: (1) Panduro's phone had "text messages from an individual named Zack as well as multiple phone calls to and from the phone to Zack"; (2) Johnson received a phone call from Panduro's cousin Ochoa who said that Keesee had set up a meeting between Panduro and Morstain at the Days Inn at 6:00 a.m.; and (3) Huff's lawyer John Collins informed Johnson that Huff "had written out a statement saying she spoke to Zack just before the homicide and he told her 'I'm going to be gone for a while. Leo threatened to cut my fingers off so me and my boys are going up to take care of him.'" May 10, 2018 Application; June 13, 2018 Application (collectively, the "Warrant Applications").

The June 13 application additionally stated that location data from Keesee's phone placed him in the vicinity of the Conway Days Inn at the time of the homicide and included various information linking Keesee to the homicide attributed to William Marbary, Rachel Walls, Jason Cole, and John Collins. June 13, 2018 Application.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336,

340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

A.  James Burroughs

Summary judgment is granted on Keesee's claim that Burroughs violated his constitutional rights by coercing Huff into making a false statement. This is true because Keesee cannot bring a 42 U.S.C. section 1983 claim against Burroughs and there is no *Bivens* remedy for the violation Keesee alleges.

### 1. Federal actor

Keesee cannot sue Burroughs under section 1983 because Burroughs was a deputized member of the U.S. Marshals task force and he interviewed Huff in that capacity. Section 1983 claims are not available against "persons acting under color of federal law." *Yassin v. Weyker*, 39 F.4th 1086, 1089 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 779 (2023). State or local law enforcement officials who have been deputized by a federal agency to participate in a task force are considered federal actors for purposes of section 1983 claims arising from their participation in the task force. *See Askar v. Hennepin Cnty.*, 600 F. Supp. 3d 948, 953–55 (D. Minn. 2022) (citing cases). And although Keesee disputes that Burroughs interviewed Huff in his capacity as a Special Deputy U.S. Marshal, the record shows that

Burroughs at least purported to do so, which is enough to establish that he acted under color of federal law. *See Yassin*, 39 F.4th at 1091 ("What matters is that [the officer] acted or *purported to act* in the performance of her federal duties.") (cleaned up) (italics in original).

Keesee argues on various grounds that Burroughs interviewed Huff as a Conway police officer, but none are persuasive. Br. Supp. Resp. Mot. Summ. J. ¶¶ 59–69, Doc. No. 236. The fact that Burroughs has been identified as a "City Defendant" in this lawsuit is irrelevant to whether he acted under color of federal law. Conducting an interview with a witness thought to have useful information about a fugitive crime suspect is consistent with both local law enforcement duties and attempting to apprehend the fugitive. *See Yassin*, 39 F.4th at 1090 (officer acted under color of state law when object of her actions "was only on her radar because she was assigned to a federal investigation"). Keesee's argument that the cellular location data did not come from the U.S. Marshals is contradicted by the record and my previous order, as well as irrelevant to whether Burroughs interviewed Huff as a Special Deputy U.S. Marshal. *See* SUMF ¶¶ 39–43; Keesee Phone Order, Doc. No. 231-14; Order on Mot. Dismiss 4–5, Doc. No. 180.

Finally, although Burroughs interviewed Huff before an arrest warrant for Keesee was issued, this does not preclude him from acting under color of federal law under section 1983. Keesee's argument that Burroughs must show a "causal connection between the charged conduct and asserted official authority" is not persuasive because it is based on a case interpreting the federal officer statute rather than section 1983. *See Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (cleaned up). The record shows that Burroughs became

involved in the investigation as part of the U.S. Marshals task force attempting to locate Keesee and other homicide suspects, identified himself as a Special Deputy U.S. Marshal, and interviewed Huff in that capacity. SUMF ¶¶ 22–24; Burroughs Decl. ¶¶ 3–4; Incident Report 27, 29, 30, 32, 34, 35, 38, 39, 46. This is enough for his actions to have been under the color of federal law. *See Yassin*, 39 F.4th at 1091 (section 1983 claim not available against task force officer who "*purported to act* in the performance of her federal duties").

### 2. Bivens *remedy*

Because Burroughs acted under color of federal law when he interviewed Huff, Keesee may proceed against Burroughs only, if at all, under the remedy created by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Summary judgment is proper because Keesee's claims do not fall within the limited number of circumstances in which *Bivens* actions are available.

*Bivens* claims are available for some Fourth Amendment unreasonable search and seizure claims, and Keesee argues that Burroughs's alleged coercion of Huff into making a false statement violated his Fourth Amendment rights. But claims that officials "manufacture[d] . . . false testimony" implicate due process, not the Fourth Amendment. *Dean v. Searcey*, 893 F.3d 504, 517, 519 (8th Cir. 2018); *see Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012) (coercing guilty plea violates Fourteenth Amendment right to due process). Because there is no *Bivens* remedy for Fourteenth Amendment violations, Keesee's claim against Burroughs must be dismissed. *See Egbert v. Boule*, 596 U.S. 482, 486 (2022) (holding that it is "clear" that a *Bivens* remedy should not be extended except in "the most

7

unusual circumstances"); *see also Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (declining to extend *Bivens* to claim against federally deputized officials).

B. Andrew Johnson

Summary judgment is granted on Keesee's claim that Johnson violated his Fourth Amendment rights by providing false information in his applications for warrants of arrest.

*Heck v. Humphrey*, 512 U.S. 477 (1994) bars the part of Keesee's claim challenging Johnson's inclusion in the applications of Huff's statements that Keesee told her he was coming up to "take care of" Panduro because he threatened Keesee and would be gone for awhile. Br. Supp. Resp. Mot. Summ. J. ¶ 96. This is true because it constitutes an attack on the evidence that convicted him. In *Heck*, the Supreme Court barred section 1983 suits when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. Defendants previously raised a *Heck* defense in two motions for judgment on the pleadings and I reserved judgment on whether it barred Keesee's claims. *See* Doc. Nos. 19 & 102; Order on First Mot. J. Pleadings 3, Doc. No. 47. With the benefit of a full record and more extensive briefing, it is clear that if Keesee prevailed on this claim, it would imply the invalidity of his conviction. This is true because Huff's testimony at trial was consistent with the statements Keesee challenges and formed an important part of the prosecution's evidence. *See* Tr. of *State v. Keesee*, Case No. 23CR-18-644 (Faulkner Cnty. Cir. Ct.), Doc. No. 1-4, pp. 1123–1131; *Williams v. Schario*, 93 F.3d 527, 529 (8th Cir.1996) (claim that officer presented false testimony *Heck*-barred because it necessarily implied invalidity of conviction or sentence).

Keesee's reliance upon *Odom v. Kaizer*, 638 F. App'x 553 (8th Cir. 2016), an unpublished memorandum opinion, does not change this analysis. That case held that a section 1983 claim for providing false information in support of issuance of an arrest warrant was not *Heck*-barred by the defendant's conviction after pleading guilty to the offenses for which he was arrested. *Id.* at 553. Not only is *Odom* not binding precedent, *see* 8th Cir. Rule 32.1A, but it is distinguishable because Keesee was convicted after a trial in which the prosecution relied on the evidence he challenges, while the plaintiff in *Odom* entered a guilty plea. *Odom*, 638 F. App'x at 553. Summary judgment is therefore appropriate.

Moreover, this claim would not survive summary judgment even if *Heck* did not bar it, because Keesee has not shown that Huff's statements were false. *See United States v. Neal*, 528 F.3d 1069, 1072 (8th Cir. 2008) (requiring proof of false statement in affidavit).

The remaining information in the applications for arrest warrants is not barred by *Heck* because it does not appear to have been part of the prosecution's case against Keesee. *See generally* Tr. of *State v. Keesee* 192–1434. Keesee's challenge to its inclusion is therefore analyzed under the standard from *Franks v. Delaware*, 438 U.S. 154 (1978). *See Klingensmith v. Cruz*, No. 5:19-CV-5185, 2022 WL 1286229, at *7 (W.D. Ark. Jan. 31, 2022), *R&R adopted*, 2022 WL 813610 (W.D. Ark. Mar. 16, 2022) (citing *Odom*, 638 F. App'x at 554). Keesee must show that (1) Johnson "knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit," and (2) "without the false statement, the affidavit would not have established probable cause." *Neal*, 528 F.3d at 1072 (8th Cir. 2008) (citing *Franks*, 438 U.S. at 155–56). Summary judgment

9

is proper because Keesee has failed to establish both elements.

Under the "common sense" evaluation of these applications "as a whole" that courts are directed to undertake (as opposed to a "hyper technical" parsing of "individual parts in isolation"), there is no genuine dispute that Johnson did not make any false statements with actionable intent. *Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2001). Take first the incorrect dates in the narratives of the applications. The correct date appears elsewhere in the applications, making these "inconsequential typographical error[s]" that "did not compromise the probable-cause finding." *United States v. Allen*, 667 F. App'x 568, 569 (8th Cir. 2016); Warrant Applications 1. Likewise with the applications' statement that Panduro's phone contained "text messages from an individual named Zack." Warrant Applications 1. Keesee points out that the phone actually contained only one message *from* Zack to Panduro (but several from Panduro *to* Zack). Br. Supp. Resp. Mot. Summ. J. ¶ 28. The fact that Johnson used "from" and not "with" or "between" in describing the texts is a "mere typographical error" that neither establishes intentionality or recklessness nor "cast[s] doubt on the affidavit's showing of probable cause." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010).

With respect to the incorrectly checked habitual offender box, Keesee's point that Johnson could have used resources at his disposal as a police officer to discover that Keesee did not have prior felonies is well taken. Br. Supp. Resp. Mot. Summ. J. ¶ 25. But even if Johnson checked the habitual offender box knowingly or recklessly, there was more than enough other evidence linking Keesee to the homicide for the application to have established

probable cause without it being checked. *Neal*, 528 F.3d at 1072. The remaining alleged instances supporting Keesee's claim fail at an even earlier stage in the analysis because Keesee has not shown that they constitute false statements.

First, Keesee alleges Johnson included information from Ochoa he knew or should have known to be false: that Keesee arranged the meeting and that it was for a truck purchase between Panduro and Morstain. Br. Supp. Resp. Mot. Summ. J. ¶¶ 30–36. Keesee contends that the text messages from Panduro's phone instead show that Ochoa arranged the meeting and that it was for delivery of an associate's money. *Id.* ¶¶ 33–34. The record does not support this claim. The texts do show that Ochoa introduced Panduro and Morstain and that Morstain mentioned bringing "Frankie's money." Add. Mot. Default J. 3–4, Doc. No. 118. But they also show that Morstain and Panduro already knew where and what time to meet. *Id.* This indicates that someone else had discussed the logistics of the meeting with each of them prior to their introduction, which could have been Keesee. The text messages are thus consistent with rather than contradictory to Ochoa's account, and Keesee fails to establish the first element of the *Franks* standard.

Next, Keesee argues that Johnson knowingly misrepresented in the applications for warrants of arrest that cell-site location data for Keesee's phone number placed him near the scene of the homicide. Br. Supp. Resp. Mot. Summ. J. ¶¶ 42–43. This assertion is soundly refuted by the record. A previous order places the authenticity of the court order authorizing access to location data from Keesee's cell phone beyond dispute. *See* Order on Mot. Dismiss 4; Keesee Phone Order, Doc. No. 231-14. Neither is there any genuine dispute that the

location data existed or was in Johnson's possession when he submitted the application for the second warrant, as Keesee's own exhibits to a prior hearing show. Doc. Nos. 177, 182; SUMF ¶¶ 40–43. And Keesee has presented no evidence suggesting that the location data did not actually place him near the scene of the homicide.

Additionally, Keesee claims that Johnson included false evidence from several witnesses in the application. Br. Supp. Resp. Mot. Summ. J. ¶¶ 40–50. As an initial matter, summary judgment is granted on Keesee's claim with respect to Rachel Walls and Detective Cole because he has presented no evidence or argument to rebut Johnson's arguments as to them. *See Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) ("failure to oppose a basis for summary judgment constitutes waiver of that argument") (citation omitted).

Summary judgment is also granted on Keesee's claim with respect to William Marbary and John Collins because his "evidence" in support of it is mere conjecture. Keesee argues that evidence provided by Marbary in his interview with Johnson was false because the interview was not recorded and because he flatly denies that he was present at the crime scene. Br. Supp. Resp. Mot. Summ. J. ¶ 44. He also argues that Johnson illegally "shaped" Huff's testimony to conform to Johnson's theory of the case. *Id.* ¶ 45; Taylor Huff Interview Tr. 5–6. These arguments, however, are based on speculation and are insufficient to create a genuine issue of fact. *See Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012) ("Speculation and conjecture are insufficient to defeat summary judgment . . . .").

Finally, claims that Johnson (1) misrepresented the ownership of a vehicle used in the

homicide or (2) misleadingly omitted information from the applications are not at issue because they were neither alleged in Keesee's complaint nor disposed of by an earlier order. *See* Sec. Am. Compl. 23–28, Doc. No. 49; Order on Mot. J. Pleadings 3.

### IV.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and both of Keesee's claims are dismissed with prejudice.

IT IS SO ORDERED this 11th day of June, 2024.

_____
UNITED STATES DISTRICT JUDGE